# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK ANTHONY HENDERSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:18-cv-298 (SRU) |
| | : | |
| LIEUTENANT TUTTLE, et al., | : | |
|     Defendants. | : | |

## **INITIAL REVIEW ORDER**

On February 20, 2018, Mark Anthony Henderson, an inmate currently confined at Cheshire Correctional Institution, brought a *pro se* civil rights complaint under 42 U.S.C. §§ 1983, 1986, and 1988 against eleven employees of the Connecticut Department of Correction ("DOC") in their individual and official capacities for various violations of his First and Eighth Amendment rights while he was confined at Northern Correctional Institution ("NCI") in Somers, Connecticut. On March 7, 2018, the court, *Garfinkel, J.*, granted Henderson's motion to proceed *in forma pauperis*. *See* Order #8. I dismissed the complaint without prejudice on April 26, 2018 because it failed to comply with the rules of proper pleading and joinder, Fed. R. Civ. P. 8 and 20, but allowed Henderson an opportunity to file an amended complaint.

On May 11, 2018, Henderson filed an amended complaint against five of the eleven defendants previously listed for violating his Eighth Amendment right against cruel and unusual punishment. Am. Compl. [Doc.#13]. The five defendants are Lieutenant Tuttle, Lieutenant Blackstock, Nurse S. Duncan, Nurse L. Michaud-Alvarez, and Warden William Faneuff. He does not specify whether he is suing the defendants in their individual capacities, official capacities, or both. Based on his initial complaint, I will assume he is suing all five defendants in both their individual and official capacities. Henderson seeks an injunction in the form of an

order for medical treatment and monetary damages. For the following reasons, his amended complaint is dismissed in part.

I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

Henderson's amended complaint alleges the following facts:

On March 29, 2017, at approximately 2:00 p.m., Henderson was in an outside recreation unit at NCI and asked to speak with his housing unit manager regarding an issue he had had with correctional staff taking his headphones and breaking his television. Am. Compl. ¶ 1. Ten minutes later, Lieutenants Tuttle and Blackstock and several other unidentified correction

officers came to remove Henderson from the recreation unit. *Id.* at ¶ 2. Tuttle and Blackstock ordered Henderson to place his hands in handcuffs. *Id.* at ¶ 3. One minute later, pepper spray was released into the recreation unit, covering Henderson. *Id.* at ¶ 4. At that point, Tuttle stated, "Put him in in-cells, let him burn." *Id.* After he was handcuffed, the officers removed him from the recreation unit and placed him in the 1 West medical unit. *Id.* at ¶ 5.

When he arrived in the medical unit, Nurses Duncan and Alvarez instructed Henderson, while handcuffed, to place his head under running water from a nearby faucet. Am. Compl. ¶¶ 6-7. The nurses washed the chemical agent off his face and eyes and then wiped his face with a paper towel. *Id.* at ¶ 6. Shortly thereafter, Henderson was escorted out of the medical unit. *Id.* at ¶ 8. He had difficulty opening his eyes because of the pepper spray that had been applied to his head and neck area. *Id.* Tuttle, Blackstock, Duncan, and Alvarez did not allow Henderson to take a shower to fully wash off the chemical agent, in violation of DOC administrative policy. *Id.* at ¶ 9. The medical incident report that Duncan and Alvarez generated from Henderson's visit to the medical unit stated that Henderson received decontamination treatment in the form of a flushing of the eyes and that no other injuries or medical complaints were reported. Pl.'s Ex. 2B [Doc.# 13-2].

Tuttle, Blackstock, and other correction officers placed Henderson in cell 102 and ordered him to change clothes. Am. Compl. ¶ 10. The staff then placed him in in-cell restraints, which consisted of handcuffs, a chain around his waist, and leg shackles with a black box and tether chain. *Id.* at ¶ 11. Henderson believes that the staff subjected him to in-cell restraints, despite his compliance with their orders, as an act of unnecessary punishment. *Id.* at ¶ 12.

Once secured in cell 102, Henderson noticed that the toilet in the cell was not working

3

properly and was filled with urine and feces. Am. Compl. ¶ 13. There was also dried blood on the toilet seat and urine on the floor next to the toilet. *Id.* at ¶ 14. The right leg shackle Henderson was wearing was also cutting into the back of his leg. *Id.* at ¶ 15. The improperly placed leg shackle and the malfunctioning toilet rendered Henderson unable to eat, sleep, drink water, or use the bathroom. *Id.* at ¶¶ 15-16. Henderson remained in cell 102 with these conditions for four days, during which time he engaged in a hunger strike. *Id.* at ¶ 17. He was taken off in-cell restraint status on April 1, 2017. *Id.*

On May 4, 2017, Henderson filed a grievance regarding his placement in the unsanitary cell with the malfunctioning toilet. Am. Compl. ¶ 18. At the time, it was known that cells 101-103 contained such unsanitary conditions.[1] *Id.* at ¶¶ 18-19. One month later, he received a "compromised" disposition of his grievance from Warden Faneuff, which he could not appeal. *Id.* at ¶¶ 20-21; Pl.'s Exs. 4, 5 [Doc.#s 13-5, 13-6]. The disposition stated that "[t]here is no evidence to substantiate your claims of urine on the floor, feces on the floor or dried blood on the toilet, nonetheless, upon an inmate being removed from a cell and placed in another cell, the outside detail workers properly clean and sanitize the cell in accordance with Department Policies and Procedures." Pl.'s Ex. 4.

Henderson filed another a grievance against Tuttle and Blackstock for their failure to decontaminate him of the chemical agent on March 29. Am. Compl. ¶ 22. That grievance was denied on June 8, and the appeal was denied on July 16. *Id.* at ¶ 23. In denying the grievance, Warden Faneuff stated that "showers are not feasible at [NCI]" and, per DOC policy, an inmate in full restraints is not permitted to use the shower. Pl.'s Ex. 6 [Doc.# 13-7]. "Decontamination

---

[1] Henderson attached an affidavit from another inmate, Peter Taraslo, attesting to the

of any exposed person shall include flushing of [the] eyes, decontaminating exposed skin by medical personnel, and issuance of clean clothing." *Id.* Faneuff noted that, after being subjected to pepper spray, Henderson was taken to the medical unit, where his eyes were flushed and his skin was decontaminated, and then to cell 102, where he was provided clean clothing. *Id.*

On June 8, Henderson filed a third grievance against Duncan and Alvarez for their failure "to provide decontamination" of the chemical agent. Am. Compl. ¶ 24. He received a disposition of that grievance the same day. *Id.* Henderson tried to appeal the grievance, but he believes his efforts were thwarted by correctional staff. *Id.* at ¶¶ 25-27.

III. Analysis

Henderson claims that Tuttle and Blackstock violated his Eighth Amendment right against cruel and unusual punishment by using excessive force against him on March 29, 2017 through the use of pepper spray despite his compliance with their orders. Am. Compl. ¶¶ 1-5. He claims that all five defendants violated his Eighth Amendment rights by subjecting him to unsanitary conditions of confinement for four days following the pepper spray incident. *Id.* at ¶¶ 6-20. I conclude that Henderson has stated plausible Eighth Amendment claims against Tuttle, Blackstock, and Faneuff but not against Duncan or Alvarez.

A. Claim for Injunctive Relief

In addition to damages, Henderson seeks "an injunction ordering [the] defendants [to] provide [him] with a medical examination and treatment by an orthopedic specialist to examine [his] right ankle because of ongoing symptoms of pain in the area of [his] Achilles tendon behind [his] right ankle." Am. Compl. at 14. This claim for injunctive relief is unwarranted for two

---

unsanitary conditions in cell 102. Pl.'s Ex. 3 [Doc.# 13-4].

reasons. First, Henderson is no longer housed at NCI, and it is well established that an inmate's transfer to a different prison facility moots any claim for injunctive relief absent a showing that the harm is capable of repetition. *See FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *Prims v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). Henderson is now confined at Cheshire Correctional Institution and has not alleged any continuing harm from the defendants' actions. Second, Henderson never alleged in his amended complaint that he informed the defendants about an injury to his leg. He only alleges that he voiced concerns over the chemical agent and the unsanitary conditions in cell 102. Therefore, his request for injunctive relief is without merit and is hereby DISMISSED.

      B.      <u>Claims Against Defendants in their Official Capacities</u>

To the extent Henderson is suing the defendants in their official capacities for monetary relief, such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Because he has not stated a cognizable claim for injunctive relief, I will dismiss all claims against the defendants in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2). *See Watson v. Doe*, 2016 WL 347339, *41 n.5 (N.D.N.Y. Jan. 28, 2016) (dismissing all claims against defendants in official capacities when plaintiff does not seek declaratory or injunctive relief).

      C.      <u>Excessive Force</u>

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). To establish a claim of excessive force under the Eighth Amendment, Henderson must satisfy a subjective and

objective component. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The subjective component requires a showing that Tuttle's and Blackstock's use of physical force was "malicious[] and sadistic[] rather than as part of a good faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 9). The objective component . . . focuses on the harm done in light of contemporary standards of decency, but the amount of harm that must be shown depends on the nature of the claim. *Sims*, 230 F.3d at 21; *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 688 (S.D.N.Y. 2016). Although some degree of injury ordinarily will be required; *Banks*, 168 F. Supp. 3d at 688; Henderson does not have to show that he sustained a significant injury in order to prevail on an excessive force claim. *Sims*, 230 F.3d at 22; *Wilkins*, 559 U.S. at 37. He sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that [Tuttle and Blackstock] subjected him to excessive force, and did so maliciously and sadistically . . . ." *Sims*, 230 F.3d at 22.

Construed liberally, the facts alleged in the amended complaint state a plausible excessive force claim against Tuttle and Blackstock. Henderson alleges that, as he was complying with their demand that he be placed in handcuffs, they or other correctional officers nearby sprayed him with chemical agent causing injury to his eyes and skin. *See* Am. Compl. ¶ 3. Tuttle then ordered that he be placed in in-cell restraints and that the officers should "let him burn." *Id.* at ¶ 4. I conclude that these allegations are sufficient for Henderson's excessive force claim to proceed against Tuttle and Blackstock in their individual capacities for damages.

D.  Unlawful Conditions of Confinement

Henderson also claims that all five defendants subjected him to unconstitutional

conditions of confinement after the pepper spray incident by denying him a shower to wash off the chemical agent and placing him in a cell with extremely unsanitary conditions. To state an Eighth Amendment claim for unconstitutional conditions of confinement, Henderson must allege facts demonstrating the defendants' failure to provide for his "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Henderson may prevail on his Eighth Amendment claim based on unconstitutional conditions of confinement "only where he proves both an objective element—that the [defendants'] transgression was 'sufficiently serious'—and a subjective element—that the [defendants] acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (3d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)).

A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Thus, the "objective component relates to the seriousness of the injury." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). To meet the subjective component, Henderson must allege that the defendants knew "of and disregard[ed] an excessive risk to [his] health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." *Phelps*, 308 F.3d at 185-86.

I do not conclude that Henderson has stated a plausible Eighth Amendment claim with respect to the denial of the shower after he was pepper sprayed. He alleges that the nurses in the medical unit helped him decontaminate by washing his face and eyes with water to remove the

8

chemical agent. Am. Compl. ¶ 6. However, Henderson has stated a plausible claim against Tuttle, Blackstock, and Faneuff for his placement in cell 102 for four days, the conditions of which were extremely unsanitary. Although Faneuff stated in the grievance disposition that the cell was kept clean, I must accept as true Henderson's allegations at this time. Therefore, I will permit Henderson's Eighth Amendment claim for unconstitutional conditions of confinement to proceed against Tuttle, Blackstock, and Faneuff in their individual capacities for damages. The claims against Nurses Duncan and Alvarez are DISMISSED.

E. Claims under Sections 1986 and 1988

To the extent Henderson still wishes to pursue claims under 42 U.S.C. §§ 1986 and 1988, those claims are dismissed. "Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985. . . Thus, a prerequisite for an actionable claim under section 1986, is a viable claim under section 1985." *Harnage v. Dzurenda*, 2014 WL 3360342, *2 (D. Conn. June 9, 2014). In order to state a claim under section 1985, Henderson must allege that:

> (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege. *Importantly, [Henderson] must show that the conspiracy was motivated by a racial or otherwise class-based invidious discriminatory animus.*

*Id.* (emphasis added); *see also Dolan v. Connolly,* 794 F.3d 290, 296 (2d Cir. 2015). Henderson has not alleged facts showing that the defendants were part of conspiracy motivated by racial or otherwise unlawful discrimination. Moreover, "[s]ection 1988 does not provide a cause of action – instead, it 'authoriz[es] the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation[]." *Oquendo v. Department of Correction*, 2018 WL 1069577, *5

9

(D. Conn. Feb. 27, 2018) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Therefore, Henderson's claims under sections 1986 and 1988 are DISMISSED.

**ORDERS**

(1) All claims against Nurse Duncan and Nurse Michaud-Alvarez are DISMISSED. The claim for injunctive relief and all claims against the defendants in their official capacities are DISMISSED. All claims under sections 1986 and 1988 are DISMISSED. The case shall proceed on the Eighth Amendment excessive force claim against Tuttle and Blackstock in their individual capacities for damages and on the Eighth Amendment conditions of confinement claim against Tuttle, Blackstock, and Faneuff in their individual capacities for damages.

(2) The Clerk shall verify the current work addresses for Tuttle, Blackstock, and Faneuff with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint [Doc. #13] to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If Tuttle, Blackstock, or Faneuff fail to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Tuttle, Blackstock, and Faneuff shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

So ordered.

Dated at Bridgeport, Connecticut, this 19th day of September 2018.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge